# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RUDOLF,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and ALEXANDER BAUGH,<br><br>Defendants. | Civil Action No. 19-1468<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 75 |

## MEMORANDUM ORDER

Plaintiff John Rudolf ("Rudolf") initiated this action against Defendants American International Group, Inc. ("AIG"), National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") and Alexander Baugh ("Baugh") (collectively, "Defendants") arising out of allegations that he was unlawfully terminated from his employment in violation of the Sarbanes-Oxley Act, the False Claims Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act. Rudolf also brings claims for Equal Pay Act violations, intentional interference with contractual relations, fraud, wrongful discharge, and breach of contract. ECF No. 41.

Presently before the Court is Rudolf's Motion to Compel and Brief in Support. ECF Nos. 75 and 76.[1] For the reasons that follow, the Motion to Compel is granted in part and denied in part.

---

[1] Rudolf originally filed his Motion to Compel at ECF No. 74. It was re-filed at ECF No. 75 to correct a filing error.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Rudolf is a senior insurance executive who was formerly employed by AIG and/or NUFIC. ECF No. 41 ¶ 5; ECF No. 31-1 ¶¶ 2-3. Rudolf claims that he was unlawfully terminated from his position in November 2017 for reporting fraud. ECF No. 76 at 2. He alleges that he disclosed fraudulent activities involving AIG in a phone call with Baugh, who was Rudolf's supervisor and AIG's Chief Executive Officer of North America General Insurance, on November 12, 2017. Id.; ECF No. 41 ¶ 6. According to Rudolf, Baugh then falsely reported to Peter Zaffino ("Zaffino"), the CEO of AIG General Insurance, that Rudolf had resigned during this call. ECF No. 76 at 2.

Baugh consulted with attorney Michael Leahy ("Leahy"), AIG's Deputy General Counsel and Head of Litigation, regarding Rudolf's allegations of misconduct at AIG. Id. Leahy then coordinated with attorney Andrew Curtin ("Curtin"), AIG's Senior Managing Director and Global Head of Investigations, to conduct an internal investigation into Rudolf's allegations (the "GIG investigation"). ECF No. 78 at 5. Curtin conducted this investigation with the Global Investigation Group ("GIG"),[2] which is responsible for investigating allegations of fraud and other misconduct. Id. at 5-6. The GIG investigation involved Curtin and his team interviewing Rudolf, collecting documents, and drafting interview and investigative memoranda. Id. at 6. According to Defendants, the purpose of this investigation was to "provide legal advice to AIG concerning whether there were any legal issues with Rudolf resigning and to collect information from Rudolf about potential alleged wrongdoing or illegal activity." Id.

After the GIG investigation, Human Relations ("HR") employees told Baugh that he was now free to make a "business decision" regarding Rudolf's employment. Id. at 7; ECF No. 76-1

---

[2] The members of Curtin's GIG team included Kristen Lau ("Lau"), Gregory Lisa ("Lisa"), Frank Novick ("Novick") and Zachary Jost ("Jost"). ECF No. 78-2 ¶ 6.

2

at 7. Baugh then met with Rudolf and told him that his resignation had been accepted. During this meeting, Baugh also informed Rudolf that Curtin's investigation found no evidence of any ongoing fraud. ECF No. 78 at 7; ECF No. 76-1 at 5.

According to Defendants, Baugh did not participate in the GIG investigation. ECF No. 78 at 6. Defendants also claim that Baugh never spoke with Curtin about the investigation, or any other subject; Baugh never spoke with any GIG team members about Rudolf; and Baugh was not advised, by anyone, of any specific information that Rudolf imparted to GIG. Id. Because Baugh was the sole decisionmaker, Defendants have argued there is no plausible causal connection between anything that Rudolf shared during the GIG investigation and Rudolf's alleged termination. ECF No. 22 at 33.

**B. The Motion to Compel**

Rudolf filed the instant Motion to Compel and Brief in Support on October 6, 2021. ECF No. 75 and 76. He moves to compel two categories of discovery. First, he seeks to compel the production of six emails involving communications with Baugh (collectively, the "Baugh Emails"), which Defendants have redacted or withheld on the basis of attorney-client privilege and the work product doctrine. Those emails, identified at Defendants' Privilege Log Nos. 1, 2, 14, 15, 20 and 27, are described as follows.

| Privilege Log No. | Description | Claimed privilege |
|---|---|---|
| 1 and 2 | Emails from Baugh to Zaffino on 11/12/17 at 12:07 P.M and 4:31 P.M. | Attorney client Work product |
| 14 | Email from Rick Joers ("Joers") to Baugh on 11/14/17. | Attorney client Work product |
| 15 | Email from Joers to Annette Bernstein ("Bernstein") on 11/14/17, with copy to Ryan Merritt ("Merritt") and Yogita Naik ("Naik"). | Attorney client Work product |
| 20 | Email from Naik to Tracy McMillan ("McMillan") on 11/15/17, with copy to Merritt. | Attorney client Work product |

| 27 | Email from Curtin to Joers, Baugh, Bernstein and Merritt on 11/16/17, with copy to Naik. | Attorney client Work product |

Second, Rudolf seeks to compel the production of materials related to the GIG investigation. He moves to compel Curtin and other unspecified witnesses' deposition testimony about the investigation. He also seeks to compel documents related to the GIG investigation that are identified at Privilege Log Nos. 32 through 41 (the "GIG Documents"), described as follows.

| Privilege Log No. | Description | Claimed Privilege |
|---|---|---|
| 32 | Email chain concerning GIG investigation, including 11/12/17 email from Curtin to Lisa; 11/12/17 email from Leahy to Curtin; 11/12/17 email from Bernstein to Leahy, copying Lucy Fato ("Fato") and Karen Nelson ("Nelson"); and 11/12/17 email from Leahy to Fato, Bernstein and Nelson. | Attorney client Work product |
| 33 | Email chain concerning GIG investigation including 11/12/17 email from Curtin to Lisa. | Attorney client Work product |
| 34 | Notice to Rudolf regarding the GIG investigation. | Attorney client Work product |
| 35, 36, 37 and 38 | Curtin's memoranda regarding interviews with Rudolf for GIG investigation dated November 13 and 14, 2017. | Attorney client Work product |
| 39 | Memorandum regarding the GIG investigation (undated). | Attorney client Work product |
| 40 | Documents that Rudolf provided to GIG on or about 11/14/17. | Attorney client Work product |
| 41 | GIG investigatory material. | Work product |

Defendants filed a Brief in Opposition to the Motion to Compel on October 20, 2021. ECF No. 78. The Court then ordered Defendants to produce the documents that Rudolf seeks to compel to the Court for *in camera* review. ECF Nos. 79 and 82. The identified documents have been provided to and reviewed by the Court.

The Motion to Compel is now ripe for consideration.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) provides that "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs to the case . . . ." Fed. R. Civ. P. 26(b)(1). The burden of proving that a document is privileged against disclosure is on the party asserting the privilege. Utesch v. Lannett Co., Inc., No. 16-5932, 2020 WL 7260775, at *5 (E.D. Pa. Dec. 9, 2020).

Here, Defendants assert that the documents Rudolf seeks to compel are protected by the attorney-client privilege and the work product doctrine.[3] While the attorney-client privilege and work product doctrine "function similarly in that they serve as a bar to the discovery of certain information," In re Linerboard Antitrust Litig., 237 F.R.D. 373, 380 (E.D. Pa. 2006), they have separate functions:

> [T]he attorney-client privilege promotes the attorney-client relationship and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to bring cases without fear that their work product will be used against their clients.

Westinghouse Elec. Corp. v. Rep. of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991).

### A. Attorney-Client Privilege

The attorney-client privilege applies to: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client." In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (citing

---

[3] Because this case is premised on federal question jurisdiction, the federal common law governs evidentiary privileges. Koch Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 116-17 (D. N.J. 2002) (federal common law applies as to privilege asserted in federal question cases and applies to both federal and state law claims); see also Pearson v. Miller, 211 F.3d 57 (3d Cir. 2000).

5

Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." Id. (citing Restatement (Third) of Law Governing Lawyers § 70).

The attorney-client privilege may apply even if the client is a corporation. Upjohn Co. v. United States, 449 U.S. 383, 389-90 (1981). In a corporate setting, in-house counsel may act as both business and legal advisor. Faloney v. Wachovia Bank, N.A., 254 F.R.D. 204, 209 (E.D. Pa. 2008). Communications with in-house counsel are only privileged where the "communication's primary purpose is to gain or provide legal assistance." Id. (quoting Kramer v. Raymond Corp., No. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992)). "Business communications are not protected merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence." Id. (quoting Kramer, 1992 WL 122856, at *1) (internal quotations omitted). Thus, the corporation "must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." Id. (quoting Kramer, 1992 WL 122856, at *1).

"Communications shared by non-attorney employees may be privileged if they were made in order to relay information requested by attorneys, or to disseminate legal advice given by those attorneys so that the corporation's employees act appropriately." King Drug Co. of Florence v. Cephalon, Inc., No. 2:06-cv-1797, 2013 WL 4836752, at *8 (E.D. Pa. Sept. 11, 2013) (citing Santrade, Ltd. v. Gen. Elec. Co., 150 F.R.D. 539, 545 (E.D.N.C. 1993); SmithKline Beecham Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005)).

## B. Work Product Doctrine

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or trial" unless otherwise discoverable or a party shows substantial need for the material. Fed. R. Civ. P. 26(b)(3). Protected work product includes "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative," which is "afforded near absolute protection from discovery." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003) (citing Fed. R. Civ. P. 26(b)(3)). Such information is discoverable "only upon a showing of rare and exceptional circumstances." Id.

The work product doctrine "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation," and it does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements, or for other nonlitigation purposes." United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990); United States v. El Paso, 682 F.2d 530, 542 (5th Cir. 1982) (citing Fed. R. Civ. P. 26(b)(3) advisory committee note).

Application of the work product doctrine only requires "that the material be prepared in anticipation of *some* litigation, not necessarily in anticipation of the *particular* litigation in which it is being sought." In re Ford Motor Co., 110 F.3d 954, 967 (3d Cir. 1997), *abrogated on other grounds by* Mohawk Indust., Inc. v. Carpenter, 558 U.S. 100 (2009).

## C. Waiver

The party moving to compel production bears the burden of establishing waiver. Utesch, 2020 WL 7260775, at *10. "Waivers come in various shapes and sizes." Id. (quoting In re Keeper of Records, 348 F.3d 16, 22 (1st Cir. 2003)). Express waiver "generally occurs where a party discloses a confidential communication to a nonprivileged thirty party, or discloses work product

7

materials in such a way as to 'enable an adversary to gain access to the information.'" Id. (quoting Westinghouse Elec. Corp., 951 F.2d at 1428).

If express waiver does not occur, a party may nevertheless impliedly waive attorney-client privilege or work product doctrine through his or her own actions. Id. However, the circumstances in which implied waiver occurs might occur are limited. Id. A party may impliedly waive the attorney-client privilege when it "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." U.S. Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 212 (3d Cir. 1999) (quoting Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851 (3d Cir. 1994)). In this situation, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." Rhone-Poulenc, 32 F.3d at 863.

In addition, "[w]hen a party relies on privileged information to establish a defense, that information loses its privilege." Chabot v. Walgreens Boot Alliance, Inc., No. 1:18-cv-2118, 2020 WL 3410638, at *1 (M.D. Pa. June 11, 2020). Simply denying a plaintiff's allegations is not sufficient to establish waiver; rather, defendants must "effectuate waiver by affirmatively making protected information relevant to the litigation, such that the opposing party would suffer prejudice absent production of the information." Utesch, 2020 WL 7260775, at *10-11. In other words, implied waiver occurs if the party claiming privilege "'voluntarily inject[s]' protected information into the litigation." Id. at *10 (quoting Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095, 1098 (7th Cir. 1987)).

## III. DISCUSSION

### A. The Baugh Emails

Rudolf moves to compel the production of the six Baugh Emails, claiming they are not privileged because they relate to business advice, or, in the alternative, that Defendants have waived any such privilege through disclosure or placing the communications at issue in this case. ECF No. 76 at 4-9. Upon consideration of the parties' submissions and the Court's *in camera* review, the Court finds as follows.

- **Email from Baugh to Zaffino, sent at 12:07 P.M. on 11/12/17**

Upon review, this email disseminates legal advice, and it is therefore protected by the attorney-client privilege. The Court does not find this privilege has been waived. Defendants have not placed this advice at issue, and they have not otherwise disclosed this confidential communication. Therefore, the redacted portions of this email are not required to be produced.

- **Email from Baugh to Zaffino, sent at 4:31 P.M. on 11/12/2017, Privilege Log Nos. 14 and 20**

Upon review, these emails are not privileged. With respect to the attorney-client privilege, none of the emails are sent by or to counsel. Although they refer to communications with in-house counsel, they do not appear to relay information requested by attorneys or to disseminate any legal advice. See King Drug Co. of Florence, 2013 WL 4836752, at *8. The mere fact that a communication with counsel has or will occur is not privileged.

The work product doctrine also does not apply, because there is no evidence these are documents prepared in anticipation of litigation. Accordingly, Defendants must produce these emails without redaction.

- **Privilege Log No. 15**

Upon review, this email that Naik forwarded to Baugh also must be produced without redaction. Although the email does refer to a conversation with Curtin and his conclusions regarding the GIG investigation, the Court finds that any applicable privilege has been waived. The content of this communication is largely consistent with information that was already shared with Rudolf regarding Curtin's conclusions.

Further, Defendants have impliedly waived privilege by making what Curtin and the GIG team did (or did not) communicate with Baugh about the GIG investigation relevant to the success of their defense. Defendants argue that Baugh could not have terminated Rudolf based on anything he reported during the GIG investigation because this information was never shared with Baugh. Because the success of this defense turns on what was said to Baugh about the investigation, Defendants have placed any such communications directly at issue. See Chabot, 2020 WL 3410638, at *5 ("If the success of the client's claim or defense turns on what was said during the confidential communication, then the communications were put at issue."). Therefore, this portion of the email should be produced because any applicable privilege is waived.

With respect to the remaining portions of this email, the Court does not find the redacted portion is privileged. The email primarily concerns a non-privileged conversation with Rudolf, and this content was forwarded to Baugh to refer to in making his "business decision" regarding Rudolf's employment. Based on the Court's review, it does not appear this email was exchanged primarily for the purpose of obtaining or relaying legal advice, or that it was prepared in anticipation of litigation. For these reasons, Defendants must produce this email without redaction.

- **Privilege Log No. 27**

Upon review, this email also must be produced without redaction. To the extent Curtin is being asked for legal advice based on his role in the GIG investigation, he shared this response with Baugh. For the reasons discussed, Defendants have waived any applicable privilege by placing these communications at issue.

Based on the foregoing reasons, the Motion to Compel as to the Baugh Emails is granted in part and denied in part. Defendants are not required to produce Baugh's email to Zaffino that was sent at 12:07 P.M. on 11/12/17. However, Defendants must produce without redaction the email from Baugh to Zaffino that was sent at 4:31 P.M. on 11/12/17 and the documents identified at Privilege Log Nos. 14, 15, 20 and 27.

### B. GIG Investigation Materials

Rudolf also moves to compel deposition testimony regarding the GIG investigation and the GIG Documents, identified at Privilege Log Nos. 32 through 41. ECF No. 75 ¶¶ 6-8. In the alternative, Rudolf requests that Defendants not be permitted to rely on the GIG investigation or any related communications at summary judgment or trial. ECF No. 76 at 11.

To the extent privilege applies, Plaintiff argues, Defendants have waived this privilege by affirmatively placing those materials at issue to their affirmative defenses and by disclosing the results of the investigation to Rudolf. ECF No. 75 ¶ 8; ECF No. 76 at 7-10.

In response, Defendants argue they did not waive privilege by placing the investigation at issue; instead, they have maintained the investigation is irrelevant because the sole decisionmaker, Baugh, did not specifically know what Rudolf reported during the investigation. ECF No. 78 at 10-14. Defendants also argue that disclosing the results of the investigation to Rudolf, an employee at the time, does not waive privilege over all investigation-related materials. Id.

### 1. GIG Documents

Upon consideration of the parties' submissions and *in camera* review of the GIG Documents, the Court finds as follows.

- **Privilege Log No. 34**

Upon review, this is a notice provided to Rudolf regarding the GIG investigation. This document is not privileged. Based on the Court's review, this introductory notice was given to inform Rudolf about the GIG investigation and their team's role—not to provide legal advice or in anticipation of litigation. Even if privilege arguably applied, Defendants have waived it by relying on the content of this notice in support of their Response. See ECF No. 78 at 6. Therefore, this document must be produced.

- **Privilege Log Nos. 35, 36, 37 and 38**

These memoranda document what Rudolf reported to the GIG team over the course of several interviews. In fact, the memoranda are primarily a recitation of the questions asked of Rudolf and his responses. As the party asserting privilege, it is Defendants' burden to establish that privilege was properly invoked. Utesch, 2020 WL 7260775, at *5. Having reviewed the documents at issue, the Court finds that Defendants have not met this burden.

With respect to the attorney-client privilege, Defendants have not established these communications occurred primarily for the purpose of providing legal advice. According to Defendants, GIG is responsible for investigating allegations of fraud or other misconduct. Based on the Court's review of the materials, it appears these interviews were primarily conducted to collect information from Rudolf about his allegations of wrongdoing.

While Curtin states that another purpose of the investigation was to "provide legal advice to AIG concerning whether there were any legal issues with Rudolf resigning," ECF No. 78-2 ¶ 6,

this purpose is not reflected in any meaningful way in the materials provided. For example, there is no documentation communicating this purpose for the investigation, and this purpose is not articulated in any memoranda regarding the investigation. Additionally, there is no evidence that Curtin or his team ever conducted any legal analysis or research on this issue, that Rudolf was informed of this purpose, or that Curtin or his team ultimately provided any such advice based on these communications. Based on this, the Court cannot conclude these documents are protected by the attorney-client privilege.

With respect to the work product doctrine, Defendants also bear the "initial burden of proving that the material in question was in fact prepared in anticipation of litigation." Shoop v. Harrington, No. 3:06-cv-146, 2006 WL 8458673, at *1 (W.D. Pa. Dec. 7, 2006) (citing Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000)). To determine whether this burden has shifted, the court considers "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. (quoting In re Grand Jury Invest., 599 F.2d 1224, 1229 (3d Cir. 1979)). "Blanket assertions are not enough to shift the burden to the party seeking discovery." Id. (citing S. Union Co. v. Sw. Gas Corp., 205 F.R.D. 542, 549 (D. Ariz. 2002).

This burden is not met. Defendants do not proffer any evidence demonstrating these materials were prepared in anticipation of litigation at that time, and this conclusion is not evident from the materials provided for the Court's review. Defendants do not claim they believed Rudolf to be reporting any new allegations of misconduct. Instead, Baugh claims he referred Rudolf to the legal department "to get over this hurdle of separation that [Rudolf] felt existed because of the

[Independent Counsel]." ECF No. 78 at 6. In his declaration, Curtin also does not indicate that he conducted the investigation in anticipation of litigation. ECF No. 78-2 ¶¶ 6-7.

For these reasons, the Court finds the documents at Privilege Log Nos. 35, 36, 37, and 38 are not protected from disclosure by the attorney-client privilege or work product doctrine and must be produced.

- **Privilege Log No. 39**

This memorandum contains a summary of the GIG investigation. Upon review, the Court also finds that Defendants do not satisfy their burden to show this document is protected from disclosure. This document contains no indication that it was prepared in anticipation of litigation. As discussed, there is not sufficient evidence to show the GIG investigation, itself, was conducted in anticipation of litigation. Therefore, the work product doctrine does not apply.

The attorney-client privilege also does not apply. Defendants do not claim this document was shared with others, such that the document itself is a communication arguably protected by the attorney-client privilege. To the extent the document refers to interviews conducted with Rudolf, those communications are not protected by the attorney-client privilege for the reasons discussed. Finally, to the extent the document contains the GIG team's conclusion, "the attorney-client privilege does not extend to the 'mental impressions, conclusions, opinions or legal theories' of counsel." SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). Because this document is not privileged, it must be produced.

- **Privilege Log No. 40**

These are various documents that Rudolf collected and provided to GIG on or about November 14, 2017. Upon review, contrary to Defendants' assertions, there is no communication

exchanged between Rudolf and the GIG team that is arguably protected by the attorney-client privilege. The documents, themselves, also do not contain any indicia they are protected by the attorney-client privilege, several of which are publicly available documents. Therefore, the attorney-client privilege does not apply.

With respect to the work product doctrine, these materials were collected by Rudolf. There is no evidence that AIG or the GIG team collected or prepared these materials in anticipation of litigation. As a result, the Court also finds the work product doctrine does not apply. Defendants therefore must produce the documents identified at Privilege Log No. 40.

- **Privilege Log No. 41**

This category of documents is identified in Privilege Log No. 41 as "GIG investigatory materials," which appear to have been gathered by the GIG team in connection with the GIG investigation. Defendants only assert the work product doctrine as to these documents. Because these documents were ostensibly gathered to support the GIG investigation, and Defendants have not established this investigation occurred in anticipation of litigation, the Court finds these materials are not protected by the work product doctrine. Therefore, Defendants must produce the documents identified at Privilege Log No. 41.

- **Privilege Log Nos. 32 and 33**

Finally, the documents identified at Privilege Log Nos. 32 and 33 are email chains involving Curtin and the GIG team, Leahy, Bernstein, Fato, and Nelson. Upon review, the Court finds that the document at Privilege Log No. 32 involves communications for the purpose of seeking legal advice and is protected from disclosure.

The Court also finds that the document at Privilege Log No. 33 should be produced in part. The emails sent at 12/12/17 at 5:36 p.m. from Lisa to Curtin and on 12/12/17 at 5:42 p.m. from

Curtin to Lisa do not appear to contain privileged communications and are required to be produced. Other than these two emails, however, the Court finds that the remainder of the document identified at Privilege Log No. 33 involves communications for the purpose of seeking legal advice and is protected by privilege.

In summary, the Motion to Compel the GIG Documents is granted in part and denied in part. Defendants must produce the documents identified at Privilege Log Nos. 34, 35, 36, 37, 38, 39 and 40, and the two emails dated 11/12/17 at 5:36 p.m. and 5:42 p.m. in Privilege Log No. 33. The Motion to Compel the GIG Documents is otherwise denied.

### 2. Deposition Testimony

Rudolf also requests the Court to order that "Plaintiff shall be permitted to take testimony from witnesses including Andrew Curtin on the topic of" the GIG investigation. ECF No. 75-1. In the Motion to Compel, Rudolf claims that Defendants have objected to producing Curtin for deposition testimony by stating that the GIG investigation is privileged, and that Curtin would only testify he never talked to Baugh. ECF No. 76 at 5. Defendants do not specifically address Curtin's deposition in their response. ECF No. 78.

Consistent with the Court's rulings in this Order, the Court finds that Rudolf may take Curtin's deposition and any other witness deposition on the topic of the GIG investigation. Any specific issues of attorney-client privilege can be raised during the deposition but must be considered in light of this Court's rulings herein. Therefore, the Motion to Compel is granted as to this deposition testimony.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Compel, ECF No. 75, is granted in part and denied in part.

An appropriate Order follows.

WHEREFORE, this 13th day of December, 2021, it is HEREBY ORDERED that the Motion to Compel, ECF No. 75, is GRANTED in PART and DENIED in part.

The Motion to Compel is GRANTED as follows. Plaintiff must produce unredacted copies of the email from Baugh to Zaffino, sent at 4:31 P.M. on 11/12/17, the documents identified at Privilege Log Nos. 14, 15, 20, 27, and 34-41, and the two emails dated 11/12/17 at 5:36 p.m. and 5:42 p.m. in the document identified at Privilege Log No. 33 on or before **December 20, 2021**. In addition, Curtin is required to appear for any properly noticed deposition. Rudolf is permitted to take the deposition of witnesses, including Curtin, on the topic of the AIG investigation.

The Motion to Compel is otherwise DENIED without prejudice.

BY THE COURT,

_____
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF.