**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN RUDOLF, | : |
| Plaintiff, | : : : *Electronically Filed* |
| v. | : : |
| AMERICAN INTERNATIONAL GROUP, INC., NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and ALEXANDER BAUGH, | : Civil Action No. 2:19-cv-01468 : : Magistrate Judge Maureen P. Kelly : : |
| Defendants. | : |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL ANSWERS TO INTERROGATORIES</u>**

## **TABLE OF CONTENTS**

                                           **Page**

I.   DEFENDANTS' RESPONSES TO PLAINTIFF'S VOLUMINOUS REQUESTS ................................................................................................ 1

II.   ARGUMENT ............................................................................................... 2

A.   Defendants Have Sufficiently Answered Interrogatory No. 4 ............................... 2

B.   Defendants Have Sufficiently Answered Interrogatory No. 8 ............................... 3

C.   Defendants Have Sufficiently Answered Interrogatory Nos. 12 and 19 ................ 4

D.   Interrogatory No. 20 Seeks Irrelevant and Burdensome Discovery ....................... 5

I.      **DEFENDANTS' RESPONSES TO PLAINTIFF'S VOLUMINOUS REQUESTS**

Plaintiff not only bears the initial burden of proving that the discovery he seeks is relevant, but also that it is proportional. "The 2015 Amendments to Rule 26(b)(1) were designed *to restore proportionality factors* . . . Accordingly, a court may limit relevant discovery if it is not proportional to the needs of the case." *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2020 WL 7424975, at *1 (W.D. Pa. Dec. 18, 2020) (citations omitted) (emphasis added). Critically, courts must also limit discovery if: (1) it is "cumulative or duplicative, or can be obtained from some other source," (2) there has been "ample opportunity to obtain the information" or (3) it is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). All of the requests at issue are disproportionate when viewed in light of Plaintiff's claims, the discovery and answers already propounded by Defendants and the nature of the information sought.

Plaintiff improperly served twenty-four interrogatories with *sixty-four total sub-parts*. (ECF 85-3.) Instead of taking issue with this violation, Defendants answered each, and after meeting and conferring, only a handful remain at issue. Plaintiff also served five sets of document requests, totaling at least 145 requests (exclusive of subparts), none of which are at issue. (*See* the Declaration of Kevin B. Leblang dated 02/11/22 ("Leblang Decl.") ¶ 5 and Ex. C thereto.) Defendants have produced 6,678 pages of documents, including pursuant to heavily negotiated ESI protocols. (*Id.* ¶ 6.) Moreover, Plaintiff has taken approximately eight hours of deposition testimony from Defendant Alexander Baugh ("Baugh") and will be taking four more hours, has noticed seven additional depositions and has advised that he intends to notice at least two more. (*Id.* ¶ 7.)

With one exception, all of the requests at issue relate to Plaintiff's age (53) and gender (male) discrimination claims, which by Plaintiff's own admissions at his deposition, are baseless. Indeed, when asked whether he believed AIG favored men over women, Plaintiff testified, "In general, I would probably say yes." (Excerpts of 1/27/22 Rudolf Deposition ("Rudolf Dep."), attached as Ex.

1

B to Leblang Decl., 241:15-18.) Plaintiff also admitted that other than having a discussion about one female (4 years younger) who in Plaintiff's mind was paid more for fewer responsibilities, he did not report discrimination to anyone. (*Id.* at 163:19-164:17.) Furthermore, Baugh and the decision-makers with respect to Plaintiff's compensation over the relevant years (Stephen Grabek ("Grabek"), Jeremy Johnson ("Johnson"), and Robert Schimek ("Schimek")) are male; two are older and two are younger (one by less than a year). (Leblang Decl. ¶ 9.) They also advocated for increased compensation for Plaintiff. (Rudolf Dep. 191:12-17, 193:18-22, 200:8-14.)

## II.  ARGUMENT

### A.  Defendants Have Sufficiently Answered Interrogatory No. 4

Interrogatory No. 4 asks for every individual known to Defendants, "who was consulted *or otherwise involved* in the decision" to separate Plaintiff and, for each person, the date of each consultation, who made the consultation, the role they played in the decision, "*including what was said*" and any documents. (ECF 85-4 at 9 (emphasis added).) In addition to the fact that "consulted" and "involved" are vague and the subparts of this request are unduly burdensome, Defendants answered it by stating that Baugh made the decision to accept Plaintiff's resignation. (*Id.* at 10; *see also* Declaration of Alexander Baugh dated 02/11/22 ("Baugh Decl.") ¶ 5.) Defendants also directed Plaintiff to documents reflecting Baugh's communications regarding Plaintiff's resignation. (Attached as Ex. D to Leblang Decl.)[1] Baugh was asked multiple lines of questions about the subject

---

[1] Plaintiff argues that individuals "consulted" might have influenced Baugh with discriminatory animus. But right after Baugh got off the phone with Rudolf, and before Baugh communicated with *anyone*, he conveyed that "Regarding [Plaintiff's] resignation, I am inclined to accept it." (Baugh Decl. ¶¶ 3-4 and Ex. E thereto; *see also* excerpts of 5/12/21 Baugh Deposition ("Baugh Dep."), attached as Ex. A to Leblang Decl., 268:21-24 ("And I had already come to the realization after that discussion with John on Sunday that it was best for him to be able to resign.")). Moreover, Rudolf's deposition testimony specifically ties the alleged decision-making as to his separation only to Baugh. (Rudolf Dep. 23:17-22, 64:11-19, 67:1-9.)

of this interrogatory (s*ee* Baugh Dep. 244:13-245:9, 253:18-254:3, 256:6-258:21), and Plaintiff will have the opportunity to ask appropriate follow-up questions in the second day of Baugh's deposition and of other deponents.

The cases upon which Plaintiff relies are not applicable. They stress that interrogatories effect judicial economy by avoiding unnecessary and costly depositions (and nowhere mention, as Plaintiff suggests, that memory loss is a reason to favor interrogatories). But Plaintiff does not intend to forego any of the eight depositions he has already noticed; thus, there is no more judicial economy that can be obtained from further discovery as to this interrogatory.[2]

### B. Defendants Have Sufficiently Answered Interrogatory No. 8

This interrogatory seeks information about "any person" who performed any of Plaintiff's former job duties *at any time* after his separation of employment and extensive additional information for each. (ECF 85-4 at 12.) Plaintiff acknowledges that his "core" duties related to his client engagement role, which is a distribution (or sales) role, and included related areas of responsibility. (ECF 86 at 3; *see also* Baugh Decl. ¶ 8.) Plaintiff also does not dispute that after his separation, Grabek took over Plaintiff's responsibilities and that in 2018, Michael Hayes ("Hayes"), Client Engagement Leader, took on Plaintiff's core client engagement role (both male, one older and one younger).

The parties' disagreement concerns Plaintiff's purported other non-core responsibilities (*id.* ¶ 9) that he accumulated towards the latter part of his employment.[3] Commercial Insurance (the area

---

[2] Plaintiff also complains that he should not have to rely on documents to discover information related to this interrogatory in part because not all documents have been produced. But Plaintiff made the decision to bring his motion knowing that on the same day Defendants would be making their only outstanding production, which has now been made. (Leblang Decl. ¶ 8.)

[3] It is ironic that Rudolf is alleging that his responsibilities *grew* during the same period he alleges he was discriminated against.

3

in which Plaintiff worked) underwent a significant reorganization in 2017 and 2018.  (*Id.* ¶¶ 5-7.) Plaintiff's non-core responsibilities essentially involved him serving, at Johnson's request, as a North America geographical touchpoint/liaison for global product lines of business.  (*Id.* ¶ 9.)  In the new structure, Commercial Insurance was renamed as General Insurance and reorganized away from global products and global functions to simply North America and International.  (*Id.* ¶ 6.)  Formerly global products and functions were realigned to North America and the need for Rudolf (or any individual) as a North America touchpoint ceased to exist – an inevitability that Baugh anticipated. (*Id.* ¶¶ 5-6, 10-11.); *see also* Baugh Dep. 148:3-11, 150:17-154:12.)  In other words, no one needed to assume the liaison role Rudolf had been performing (i.e., Rudolf's non-core responsibilities), and no one did.  (Baugh Decl. ¶ 11.)

Plaintiff's contention that Timothy DeSett ("DeSett") took on areas of Plaintiff's responsibility in 2018 is a red herring.  DeSett's role is far more expansive than any role Rudolf ever held at AIG both in terms of scope and seniority.  (Baugh Decl. ¶ 12 and Ex. F thereto.)  Per Plaintiff's own submission, DeSett is responsible not only for *overseeing* the client engagement role, but also for branch managers, zonal leaders and broker engagement.  (ECF 85-5.)  Indeed, Hayes reports to DeSett.  (Baugh Decl. ¶ 13.)  Further, DeSett is male and only about four years younger than Plaintiff. (Leblang Decl. ¶ 9.)

        **C.**      **Defendants Have Sufficiently Answered Interrogatory Nos. 12 and 19**

Interrogatory nos. 12 and 19 ask whether Defendants have been the subject of any filed whistleblower, age, or gender complaints or legal actions and extensive information for each.  The case law Plaintiff cites (none of which are about whistleblower complaints) makes it abundantly clear that evidence of other matters involving the same claims that Plaintiff brings are relevant as to "*similarly situated individuals* other than Plaintiff" to show a pattern or practice "against *similarly situated individuals*."  (ECF 86 at 4 (emphasis added).)  "While 'similarly situated' does not mean

4

identically situated, the plaintiff *must nevertheless be similar in 'all relevant respects.'*" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-223 (3d Cir. 2009) (citations omitted) (emphasis added).

Any employee who filed a whistleblower complaint would be similarly situated to Plaintiff if the decision-maker was Baugh and any employee who filed an age or gender (male) discrimination complaint would be similarly situated to Plaintiff if the decision-makers were Grabek and Johnson (Plaintiff's last two managers), Schimek (who was involved in Plaintiff's compensation) and Baugh. Defendants have already answered these interrogatories as to those decision-makers. (Leblang Decl., Ex. D.) With respect to Interrogatory No. 19, Plaintiff has not explained why the additional 17 individuals have anything to do with his gender and age claims. None of them were decision-makers with respect to Rudolf's compensation or job grade, and Baugh alone made the decision to accept Rudolf's resignation. (*See supra* note 1.)

        **D.**     **Interrogatory No. 20 Seeks Irrelevant and Burdensome Discovery**

Interrogatory No. 20 asks whether in the last 10 years any AIG employee claimed that they were terminated, not resigned, and for each to provide, among other things, information about every individual "involved" and "the outcome of each such dispute." (ECF 85-4 at 28.) Defendants do not have a repository or a collection of files to test Plaintiff's theory that there are instances involving similarly situated individuals meeting the fact pattern in this interrogatory. And even if there were, information about them would only result in mini-trials as to what may or may not have occurred, which would have no relevant bearing on Plaintiff's separation and would be disproportionate.[4]

---

[4] As to Cheryl Mehr and Gwen Ulijasz who Plaintiff identified as allegedly suffering the same fate as he did (both female and one significantly younger (Leblang Decl. ¶ 9)), he asked Baugh about them at his deposition and Baugh, the relevant decision-maker, did not know them. (Baugh Dep. 248: 4-8.) Baugh was also asked specifically whether he knew of *any other* employees at AIG who complained they did not resign and Baugh replied that he did not. (*Id.* 247:22-248:3.)

Dated:  February 11, 2022

Respectfully submitted,

*/s/ Kevin B. Leblang*
Kevin B. Leblang (NY 1999507)
kleblang@kramerlevin.com
Izabel P. McDonald (NY 2515724)
imcdonald@kramerlevin.com
(Each admitted *pro hac vice*)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Phone:  212-715-9100
Fax:  212-715-8000

Jaime S. Tuite (PA 87566)
jaime.tuite@bipc.com
Marjorie F. Bagnato (PA 313557)
marjorie.bagnato@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grand Street, Suite 200
Pittsburgh, PA 15219-1410
Phone:  412-562-8800
Fax:  412-562-1041

*Attorneys for Defendants*