**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN RUDOLF, | ) | Civil Action No. 2:19-cv-01468-MPK |
| | ) | |
| Plaintiff, | ) | The Hon. Maureen P. Kelly |
| | ) | U.S. Magistrate Judge |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL | ) | |
| GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT
PRODUCTION AND SUPPLEMENTAL INFORMATION**

Plaintiff John Rudolf, by and through undersigned counsel, moves to compel document production and supplemental information. In particular, Plaintiff moves to compel the following categories of items:

A. CVS/Caremark/MedPartners ("Caremark") Litigation and Settlement Documents;

    1. All meeting agendas (with cover emails showing recipients) referencing the Caremark litigation or settlement (preliminary and/or final) for the period from January 1, 2016 through December 31, 2017 for the (a) "Group Risk Committee," (b) "Commercial Risk Committee," and/or (c) "Risk and Capital Committee."

    2. As described further herein, unredacted versions of the (a) 12/5/2017 "Group Risk Committee" Meeting Agenda, Ex. 190 (at page AIG007156); (b) 12/12/17 "Commercial Risk Committee" Meeting Agenda, Ex. 191 (at page AIG006781), and; (c) "Risk and Capital Committee" Meeting Agenda, Ex. 192 (at page AIG007206). The limited requested areas to be unredacted are highlighted in yellow on the attached exhibits.

    3. Caremark settlement documents (notes, memoranda, etc.) including underlying approvals for settlement (whether preliminary or final) and payout of settlement proceeds ($230 million of $310 million settlement).

B. 2017-18 Reorganization Documents;

    1. Unredacted versions of the (a) 8/10/2017 Commercial Insurance "Structure/ Accountabilities /Workforce Anatomy," Ex. 184; (b) 8/31/17 "Commercial

Organizational Structure," Ex. 185; (c) 9/13/17 "Organizational Structure – Talent," Ex. 187, and; (d) 7/31/17 "Extended Leadership Group" or "ELG" List. Ex. 183.

2. All unredacted versions (with cover emails showing recipients) from July 1, 2017 through December 31, 2018 of (a) Commercial Insurance "Structure/ Accountabilities/Workforce Anatomy" documents, (b) "Commercial Organizational Structure" documents, and/or (c) "Organizational Structure – Talent" documents.

3. Organizational charts detailing who supervised each of Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

4. "Workday" [AIG's human resource management software system] or "head-count" reports detailing who supervised Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

5. A supplemental interrogatory answer detailing (name, date of birth, gender, and compensation) who supervised 9 Plaintiff's former direct reports after the reorganization was implemented in 2018 and going forward.

C. Gwen U. Documents/Gloria W. Complaint Documents;

1. All documents relating to the claim of Gwen U. that she was terminated and did not resign as alleged by her manager, as identified by Defendants in response to Plaintiff's Interrogatory No. 20.

2. All documents relating to the age and race discrimination complaint of Gloria W., as identified by Defendants in response to Plaintiff's Interrogatory No. 19.

D. Job Grade Information (Criteria and Standards);

Job grade information and documents (criteria and standards) for the following:

a. Females who reported to Rudolf's supervisors (2013-1017) including Marya Propis, Lynn Oldfield, Carolina Klint, and Nadine Silva;

b. Tom Grandmaison, who in 2016 was compared to Plaintiff for compensation purposes;

c. Steve Grabek, who for a brief period assumed Plaintiff's duties and also held a similar role (Grabek is mentioned in the Am. Compl., ECF No. 41, at paragraphs 62, 23, 94, 95, 169, and 225);

d. Tim DeSett, who Plaintiff alleges assumed some of his duties including at a higher

2

       job grade 27;

    e.    The other "Key Priority Leaders" (Plaintiff was a Key Priority Leader), namely, Alexander Baugh, Anthony Baldwin, Carol Barton, George Stratts, and Jeremy Johnson.

E.    Plaintiff's Comparator Information;

    1.    All information about compensation (base, short term incentive, long term incentive, other bonus) paid to comparator Marya Propis in 2017 and 2018.

    2.    Tim DeSett's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

    3.    All compensation information for Nadine Silva for 2017.

F.    Defendants' Alleged Comparator Information.

    1.    Mike Hayes' performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his performance of his job duties.

    2.    John Gambale's job description.

    3.    John Gambale's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

---

1.    The Parties entered into a "Confidentiality Stipulation and Protective Order" on March 17, 2021 that limits production of "confidential information" to the scope of this lawsuit. ECF No. 49.

2.    Plaintiff submits this Confidentiality Order provides sufficient protection regarding Defendants' privacy objections for its heavy redaction of relevant documents and refusal to produce requested materials.

**A.**    **CVS/Caremark/MedPartners ("Caremark") Litigation and Settlement Documents.**

    3.    The CVS/Caremark/MedPartners ("Caremark") litigation and settlement are

highly relevant matters in this SOX whistleblower case. *See* Am. Compl., ECF No. 41, ¶¶ 45-50; 75-91; 106; 117-125; 138-39; 150-51; 175.

4. Since the beginning of discovery, Plaintiff has requested documents relating to the Caremark litigation and settlement. *See* Defendants' Responses and Objections to Plaintiff's Limited (First) Request for the Production of Documents, Tab A, ¶ 33 ("Any and all documents reviewed or created by Alexander Baugh referring or relating to the putative class actions in state court in Alabama that arose out of the 1999 settlement of class and derivative litigation involving Caremark Rx, Inc. (Caremark), referenced in the AIG 10-K for fiscal year ended December 31, 2015 at pages 307-08, referenced herein as the 'MedPartners Action.'"); ¶ 34 ("Any and all documents reviewed or created by Alexander Baugh referring or relating to the settlement of the AIG-Caremark Class Action in 2016 in which AIG and/or its subsidary(ies) paid approximately $230 million."); Second Request for Production, Tab A, ¶ 39 ("All documents referring or relating to the stipulation and agreement of settlement of the litigation entitled Lauriello v. CareMark, RX, Inc., et al., Case No. CV 03-6630, brought in the Circuit Court for Jefferson County, Alabama, Tenth Judicial District."); ¶ 40 ("All documents referring or relating to the pay out by AIG or any of its subsidiaries of the settlement of the litigation entitled Lauriello v. CareMark, RX, Inc., et al., Case No. CV 03-6630, brought in the Circuit Court for Jefferson County, Alabama, Tenth Judicial District including, but not limited to, any internal or external signatures authorizing payment of the settlement proceeds."); ¶ 56 ("Any and all documents referring or relating to the communications between Larry Melo, the President and CEO of CVS Health, and Steve Miller about the litigation entitled *Lauriello v. CareMark, RX, Inc., et al.*, Case No. CV 03-6630.").

5. The Parties also agreed to an ESI Search Protocol for the terms "Caremark,"

"MedPartners," and "CVS" for the period from January 1, 2016 through December 31, 2017. First ESI Search Protocol, Tab B, p. 3 (Alexander Baugh); Second ESI Search Protocol, p. 8 (Jeremy Johnson, 1/1/16-10/31/17), Tab B, p. 9 (Robert Schimek, 1/1/16-10/31/17).

6. Plaintiff moves to compel Defendants to produce meeting agendas referencing the Caremark litigation or settlement for the period from January 1, 2016 through December 31, 2017 for the (a) "Group Risk Committee," (b) "Commercial Risk Committee," and/or (c) "Risk and Capital Committee."

7. In response to this Court's Order (ECF No. 97) directing Defendants to produce "a. Documents relative to the Caremark litigation received or reviewed by Zaffino 1/1/16 to 12/31/17," and "b. Documents relative to the Caremark litigation settlement received or reviewed by Zaffino 1/1/16 to 12/31/17," Defendants produced the following 3 documents (with email correspondence):

(1) 12/5/2017 "Group Risk Committee" Meeting Agenda referencing the Caremark litigation and settlement as one of "Significant Operational Risk Events Reported in Q3 2017," reflecting a loss of $238.5 million (Ex. 190), Tab C.

(2) 12/12/17 "Commercial Risk Committee" Meeting Agenda listing the Caremark Litigation as its no. 7 top "Legal and Regulatory Risk," noting "Commercial risk events reported in the Americas as of November 30, 2017, including $239MM class action settlement involving CVS/MedPartners, with the financial loss being absorbed by the Parent." Ex. 191, Tab C.

(3) 12/12/2017 "Risk and Capital Committee" Meeting Agenda referencing the Caremark litigation and settlement as a significant operational risk, noting that "(1) Event occurred in 2003, and settled in December 2016." Ex. 192, Tab C, 4th page (AIG7206).

8. Plaintiff moves to compel Defendants to produce similar meeting agendas referencing the Caremark litigation or settlement for the period from January 1, 2016 through December 31, 2017 for the (a) "Group Risk Committee," (b) "Commercial Risk Committee," and/or (c) "Risk and Capital Committee."

5

9. Plaintiff submits the requested information is clearly relevant and the request is sufficiently narrow in scope for discovery purposes.

10. Plaintiff also moves this Court to direct Defendants to unredact select portions of those exhibits which appear to relate to the CVS litigation, namely, (a) 12/5/2017 "Group Risk Committee" Meeting Agenda, Ex. 190 at page AIG007156 (see highlighted area); (b) 12/12/17 "Commercial Risk Committee" Meeting Agenda, Ex. 191 at page AIG006781 (see highlighted area), and; (c) "Risk and Capital Committee" Meeting Agenda, Ex. 192 at page AIG007206 (see highlighted area), Tab C.

11. The limited requested areas to be unredacted are highlighted in yellow on the attached exhibits.

12. To the extent those highlighted areas refer or relate to the CVS litigation, Plaintiff requests those portions be unredacted.

13. Plaintiff also moves to compel Defendants to produce Caremark settlement documents and, in particular, underlying approvals for settlement and payout of settlement proceeds.

14. In addition, to the extent the preliminary or final settlement was likely a claims matter, as testified to by a witness, there will be a claims file on this settlement.

15. Also, the recently produced document that the loss was absorbed by the parent company we want these documents as well.

16. These documents are relevant to determine the AIG individuals who had decision-making authority over the Caremark litigation, a claims matter, and whether those individuals included Mr. Baugh or anyone in his chain of command including any direct reports, such as Anthony Tatulli ("Head of Finanical Lines, Productions, & Claims") or Nick Berg ("Head of U.S.

Commercial Claims") who reported to Mr. Baugh and matrix-reported to Jeremy Johnson. *See* Ex. 185, p. AIG006918 (org chart), Tab D.

17. Plaintiff submits this request is sufficiently narrow in terms of temporal scope (2016 forward) and sufficiently specific for Defendants to be able to identify and produce responsive documents.

**B.     2017-18 Reorganization Documents.**

18. The 2017-2018 reorganization is highly relevant because that is one of the asserted nondiscriminatory, nonretaliatory reasons for Mr. Baugh's decision to separate Plaintiff effective November 20, 2017, namely, that his role would be limited or not survive and there were others who could fill that role.

19. It also is relevant to the job duties and identity of Plaintiff's comparators for purposes of Plaintiff's Title VII/ADEA/PHRA and Equal Pay Act claims. *See Barthelemy v. Moon Area Sch. Dist.*, No. 2:16-CV-00542, 2020 WL 1899149, at *13 (W.D. Pa. Apr. 16, 2020) ("whether comparators are "applicable" turns on them being the opposite sex, paid more, and doing substantially equal work. [...] It does not require being hired in the same year by the same administrators applying their then-current hiring and pay philosophy.") (citation omitted); *Gallaway v. Rand Corp.*, No. 2:18-CV-01379-RJC, 2020 WL 1984312, at *11 (W.D. Pa. Apr. 27, 2020) (similarities of position and that position suffice for comparator purposes).

20. Plaintiff has requested documents relating to this reorganization. *See* First Request for Production, Tab A, ¶ 30 ("Any and all documents that support any claim that John Rudolf's then-current role was not going to survive."); ¶ 31 ("Any and all documents referring or relating to any reorganization that would have affected John Rudolf's role had he remained employed."); Second

7

Request for Production, ¶ 9 ("Any and all organizational charts, including any drafts, containing John Rudolf's name and/or his prior position(s)."); ¶ 10 ("Any and all organizational charts following the reorganization that purportedly would have resulted in the diminishment of John Rudolf's duties and responsibilities."); Fourth Request for Production, ¶ 1, Tab F ("Documents including, but not limited to organizational charts or equivalents, demonstrating to whom each of Mr. Rudolf's former direct reports (Gloria Watson, Paul Kunzer, Jamie Lee, Michelle Faylo, Elizabeth Salogub, David Lynders, Nkechi Vaughn, Danielle Haddad, David Friston, Kei Ikenishi) have reported after Mr. Rudolf's employment separation in November 2017 to the present.").

21. The Parties also agreed to an ESI Search Protocol for the terms "restructur*" and "reorg*." Tab B, ESI Protocol I, p. 3 (Baugh, 9/1/17-12/1/17); ESI Protocol II, p. 5 (Baugh, 12/2/17-2/28/18).

22. Defendants produced on April 20, 2022 in advance of Mr. Zaffino's deposition the following documents relating to the reorganization:

(1) 8/10/2017 Commercial Insurance "Structure/ Accountabilities /Workforce Anatomy," a 33 page heavily redacted document except for two pages: an organizational chart at AIG 6858 (5th page) and a page on Mr. Rudolf's Primary Accountabilities (AIG 6878) 25th page. Ex. 184, Tab D.

(2) 8/31/17 "Commercial Organizational Structure," a 36 page heavily redacted document except for an organizational chart for "Americas Team Structure," p. 22 (AIG006910), Global Client Engagement page 28 (AIG006916), and the same organizational chart as the document above page 30 (AIG006918). *See* Ex. 185; Ex. 185-A (cover email to, *inter alia*, witnesses who were deposed prior to the production of this document, namely, Alexander Baugh, Rob Schimek, Jeremy Johnson, Tracy McMillan, and Yogita Naik), Tab D.

(3) 9/13/17 "Organizational Structure – Talent," an 8 page mostly redacted document except for page 6 which is chart showing individual names including Plaintiff slotted for possible roles in the new reorganization. Ex. 187.

(4) 7/31/17 email from McMillan to, *inter alia*, Mr. Zaffino and Mr. Schimek, forwarding a list

8

of members of the "Extended Leadership Group" or "ELG." Ex. 182; Ex. 183. The document is completely redacted excerpt for Mr. Rudolf. Ex. 183, AIG006845-6848.

23. Plaintiff moves to compel Defendants to produce the above Exhibits 184, 185, 187, and 183 in unredacted form.

24. Plaintiff submits the documents are highly relevant to the reorganization and to other comparator employees' duties (set forth therein) and give a more complete view of the reorganization.

25. The documents are in Defendants' possession, are relevant to Plaintiff's claims, and should be produced in unredacted form.

26. Plaintiff also moves to compel Defendants to produce any other versions of these documents namely, any other (a) Commercial Insurance "Structure/ Accountabilities /Workforce Anatomy" documents, (b) "Commercial Organizational Structure" documents, and/or (c) "Organizational Structure – Talent" documents.

27. Plaintiff submits the documents are highly relevant to the reorganization and to other comparator employees' duties (set forth therein) and give a more complete view of the reorganization.

28. The documents are in Defendants' possession, are relevant to Plaintiff's claims, and should be produced in unredacted form.

29. Plaintiff further moves for organizational charts, Workday forms, and/or a second supplemental interrogatory answer detailing who supervised Plaintiff's former direct reports after Plaintiff's termination and the reorganization was implemented in 2018 going forward. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729-30 (3d Cir. 1995) (a terminated plaintiff's replacements can

be considered incrementally and when an employer splits an employee's job among more than one person, the ages of all those people are relevant in ascertaining replacement).

30. Defendants recently produced a 2018 organizational chart but it only showed Peter Zaffino and his approximately 12 direct reports. It did not show the next level as to who reported to Mr. Zaffino's direct reports who included Mr. Baugh. It does not show who reported to Mr. Baugh and who reported to the individuals who reported to Mr. Baugh.

31. Plaintiff's former direct reports are (1) Gloria Watson, (2) Paul Kunzer, (3) Jamie Lee, (4) Michelle Faylo, (5) Elizabeth Salogub, (5) David Lynders, (6) Nkechi Vaughn, (7) Danielle Haddad, (8) David Friston, and (9) Kei Ikenishi.

32. At ECF No. 94, the Court previously ordered Defendants to provide "complete answers" to, *inter alia*, Interrogatory No. 8 requesting Defendants to provide the name, age, compensation, etc. of any person who has performed any of Mr. Rudolf's former job duties after his separation from employment.

33. Plaintiff submits this interrogatory includes information about the employees who assumed Mr. Rudolf's managerial duties over his 9 direct reports.

34. Defendants have proposed that Plaintiff agree sight unseen that he forego any organizational charts/ Workday materials regarding his direct reports in exchange for Defendants' work product listing individuals who have managed Mr. Rudolf's direct reports since his separation through 2019.

35. Plaintiff submits that Defendants' refusal to voluntarily provide this information which they have in their possession and clearly is responsive to Interrogatory No. 8 violates the Court's Order [ECF No. 94] to provide a complete answer to Interrogatory No. 8.

36. While Defendants' claim in response to Interrogatory No. 8 that Plaintiff's managerial duties allegedly were "non-core" or merely "liaison," (tab E, interrogatory response no. 8), recently produced Exhibit 184, p. AIG6878, contradicts that claim listing Mr. Rudolf's "Primary Accountabilities" to include the following: "Accountable for segment and segment product line profit and production targets," and "Accountable for centralized UW [Underwriting] teams (Financial Institutions, Major Accounts DNO, Trade Credit Political Risk, Aerospace and Bermuda Cat Access team." Exhibit 184, p. AIG6878. Thus, Plaintiff managerial duties were part of his "primary accountabilities."

37. Senior HR Director Tracy McMillan testified that Workday [AIG's HR Software system] would hold the record of the prior management structure with respect to who managed Mr. Rudolf's direct reports after he left. Tab G, McMillan Dep. at 238 ("Workday would hold the record of the prior management structure, yes."); 92-93 (with regard to whom Rudolf's direct reports reported after he left, "there would have been a reflection of that in Workday. A head-count report would show the same thing.").

38. Yogita Naik of Human Resources testified there would be organizational charts showing Mr. Rudolf's direct reports in Workday for 2017 before his termination and after he was let go which could be automatically created through Workday. *See* Tab H, Naik Dep. at 53-54 (Were there organization charts for, to your -- to your knowledge, in 2017 before John Rudolf was separated from the company? A. We had Workday as a system, and based on the reporting lines, there would be organization charts available in the organization. Q. And what about after John Rudolf was let go, were there organization charts available? A. Again, what they would automatically create organization charts based on the reporting lines.").

39. Plaintiff submits that Defendants should produce a second supplemental answer to Interrogatory No. 8 identifying the individuals who assumed his managerial duties with respect to all 9 former direct reports, organizational charts and/or Workday documents showing to whom the former direct reports have reported since the reorganization in February 2018.

C. **Gwen U. Documents/Gloria W. Complaint Documents.**

40. At ECF No. 94, the Court previously ordered Defendants to answer Interrogatory No. 19 (other gender or age discrimination complaints) and No. 20 (other employees who also claim they were terminated).

41. In Defendants' supplemental interrogatory answers, Defendants identified that Gloria W. had made a complaint to AIG of race and sex discrimination in response to No. 19, and identified Gwen U. as an employee who claimed she was terminated and did not resign as alleged by her manager in response to No. 20. Defendants' Amended Responses and Objections to Plaintifff's Interrogatories 4, 8, 12, 19, and 20, Tab E.

42. Plaintiff requested documents referring or relating to Gloria W.'s discrimination complaint and Gwen U.'s claim that she had not resigned. Second Request for Production No. 47, Tab A ("Documents referring or relating to any gender or age discrimination complaints or legal actions filed by any employee with any state or federal agency or in any state or federal court during the past ten (10) years."); Second Request No. 49 ("Documents referring or relating to the claim(s) of any employee or former employee that she or he was terminated and did not resign as alleged by her or his manager or employer during the past then (10) years.").

43. Defendants refuse to produce any responsive documents even though they identified these individuals in response to Interrogatory Nos. 19 and 20.

44. Plaintiff submits that for discovery purposes the Court already has determined that such information is relevant to Plaintiff's claims and, therefore, is discoverable. *See* ECF No. 94.

45. Plaintiff submits that Defendants have the documentation in their possession and they should be ordered to produce such information.

D. **Job Grade Information (Criteria and Standards).**

46. In this lawsuit, Plaintiff asserts that his job grade (26) should have been increased to job grade 27 based on the additional duties he assumed including in 2016 and 2017. *See* Am. Compl., ECF No. 41, ¶ 103; *see also id.*, ¶¶ 61, 64, 66-68, 99-100.

47. Plaintiff requested documents referring or relating to job grade criteria and standards. Fourth Request, Tab F, No. 9 ("Documents showing the creator, origination, definition(s), criteria, compensation and/or standards for all AIG Job Grades."); No. 10 ("Documents showing the criteria and/or standards for promotion and/or placement into AIG Job Grades.").

48. At deposition, senior HR employee Tracy McMillan testified there is a library/job family catalog of jobs and job families that resulted in a 21-grade structure with job bands associated with each one of those 21 grades by geography that depict pay ranges in terms of the 3 components of compensation, base, STI, LTI, and ultimately TDC. McMillan Dep. Vol. I at 70-72, attached at Tab G.

49. Defendants rejected Plaintiff's proposed a list of approximately 25 individuals plus a broader category of all ELG members (200+ employees), and have refused Plaintiff's request to provide responsive job grade information for anyone other than Plaintiff.

50. Plaintiff submits that job grade information and documents (criteria and standards) should be provided for the following:

13

a. Females who reported to Rudolf's supervisors including Marya Propis, Lynn Oldfield, Carolina Klint, and Nadine Silva;

b. Tom Grandmaison, who in 2016 was compared to Plaintiff for compensation purposes;

c. Steve Grabek, who for a brief period assumed Plaintiff's duties and also held a similar role (Grabek is mentioned in the Am. Compl. at paragraphs 62, 23, 94, 95, 169, and 225);

d. Tim DeSett, who Plaintiff alleges assumed some of his duties including at a higher job grade 27;

e. The other "Key Priority Leaders" (Plaintiff was a Key Priority Leader), namely, Alexander Baugh, Anthony Baldwin, Carol Barton, George Stratts, and Jeremy Johnson.

51. Plaintiff submits that the requested information is relevant for comparison purposes of Job Grades among AIG employees and Defendants have the documentation in their possession and they should be ordered to produce such information.

### E. Plaintiff's Comparator Information.

52. Plaintiff contends that his comparators include other senior employees who reported to his same supervisors, individuals who assumed his responsibilities, and other employees who were at his similar job grade with similar responsibilities and/or duties.

53. Plaintiff moves to compel Defendants to produce information about all compensation (base, short term incentive, long term incentive, other bonus) paid to comparator Marya Propis in 2017 and 2018 whom Plaintiff contends was paid more than him with significantly less responsibility. *See* Am. Compl.,¶ 96 ("Rudolf was paid less than similarly situated younger and/or female employees including, but not limited to, Marya Propis"); ¶ 299 (" As stated above, an employee of the opposite sex was paid differently and more than Rudolf for performing equal work — work of substantially equal skill, effort and responsibility, under similar working conditions.").

54. Ms. Propis was terminated at the end of 2017. Defendants have provided her actual

compensation for 2016 but only her target compensation for 2017. Defendants contend that any compensation paid in 2017 and/or 2018 was the result of a settlement agreement. Plaintiff believes that certain dollar amounts have been attributed to base salary, short term incentive, and/or long term incentive and that he should be able to discover that information including because it was paid, in part, for her actual work in 2017 and her Job Grade.

55. Plaintiff also moves to compel Defendants to produce performance evaluations of Tim DeSett. Plaintiff believes Mr. DeSett assumed some of his job responsibilities. Plaintiff believes that Mr. DeSett's job evaluations (or performance check-in summaries) in unredacted form will shed light on Mr. DeSett's actual job duties and his performance of those duties since his hiring in early 2018.

56. Plaintiff also seeks documents referring or relating to the creation of Mr. DeSett's role as Head of Field Operations as evidence of his assumption of Mr. Rudolf's job duties. *See* ECF No. 85-5 ("AIG introduces new head of general insurance field operations," naming Mr. DeSett) (January 25, 2018).

57. Plaintiff further moves Defendants to produce compensation information for female comparator NadineSilva.

58. Like Plaintiff, Ms. Silva reported to manager Jeremy Johnson in 2016 and 2017. Defendants have provided Ms. Silva's compensation information for 2016 but refuse to provide it for 2017. Defendants claim that in 2017 Ms. Silva reported to Mr. Johnson only a portion of the year. However, in the "Commercial Organizational Structure" document, (Ex. 185) there is an organizational chart for "Americas Team Structure," p. 22 (AIG006910), showing Ms. Silva reporting to Mr. Johnson which is dated August 2017. Ex. 185, Tab D. This suggests Ms. Silva had

reported to Mr. Johnson for a significant portion of 2017 and, therefore, her compensation information is relevant for comparison purposes and should be provided.

F. **Defendants' Alleged Comparator Information.**

59. Defendants contend that some of Plaintiff's duties were assumed by Mike Hayes (client engagement) and John Gambale (Asian corporate solutions). *See* Tab E, Interrogatory Response to No. 8.

60. Plaintiff seeks information about the duties they have been doing since Plaintiff's separation.

61. Defendants provided heavily redacted performance evaluations for Mr. Hayes, who was reviewed by Mr. DeSett. *See* attached Ex. 193, Tab I (filed under seal at Defendants' request).

62. Plaintiff moves to compel an unredacted version of those evaluations for a more complete assessment of Mr. Hayes' actual duties in order to compare them to Mr. Rudolf's former duties.

63. Plaintiff also moves to compel unredacted versions of Mr. Gambale's evaluations.

64. Defendants informed Plaintiff that Mr. Gambale does not have a job description and that his evaluations does not reference his alleged Asian corporate solutions duties he assumed from Plaintiff. If Exhibit 184 is un-redacted, Plaintiff should discover Mr. Gambale's profile and accountabilities.

65. Plaintiff submits that Defendants still should produce those evaluations (and any job description if found) because the alleged lack of reference to Mr. Rudolf's former duties is relevant evidence and calls into question whether Mr. Gambale has assumed Plaintiff's Asian corporate solutions duties.

66. Plaintiff has in good faith conferred with Defendants in an effort to secure the information without court action including by letters and meet and confer sessions.

67. A Certificate of Conferral is attached.

68. Because this Motion contains sufficient argument and legal citations to permit meaningful judicial review, Plaintiff is omitting a brief in support.

69. A proposed Order is attached.

70. Wherefore, Plaintiff respectfully moves the Court for an order requiring Defendants to produce the following categories of items:

A. CVS/Caremark/MedPartners ("Caremark") Litigation and Settlement Documents;

 1. All meeting agendas (with cover emails showing recipients) referencing the Caremark litigation or settlement (preliminary and/or final) for the period from January 1, 2016 through December 31, 2017 for the (a) "Group Risk Committee," (b) "Commercial Risk Committee," and/or (c) "Risk and Capital Committee."

 2. As described further herein, unredacted versions of the (a) 12/5/2017 "Group Risk Committee" Meeting Agenda, Ex. 190 (at page AIG007156); (b) 12/12/17 "Commercial Risk Committee" Meeting Agenda, Ex. 191 (at page AIG006781), and; (c) "Risk and Capital Committee" Meeting Agenda, Ex. 192 (at page AIG007206). The limited requested areas to be unredacted are highlighted in yellow on the attached exhibits.

 3. Caremark settlement documents (notes, memoranda, etc.) including underlying approvals for settlement (whether preliminary or final) and payout of settlement proceeds ($230 million of $310 million settlement).

B. 2017-18 Reorganization Documents;

 1. Unredacted versions of the (a) 8/10/2017 Commercial Insurance "Structure/ Accountabilities /Workforce Anatomy," Ex. 184; (b) 8/31/17 "Commercial Organizational Structure," Ex. 185; (c) 9/13/17 "Organizational Structure – Talent," Ex. 187, and; (d) 7/31/17 "Extended Leadership Group" or "ELG" List. Ex. 183.

 2. All unredacted versions (with cover emails showing recipients) from July 1, 2017 through December 31, 2018 of (a) Commercial Insurance "Structure/

    Accountabilities/Workforce Anatomy" documents, (b) "Commercial Organizational Structure" documents, and/or (c) "Organizational Structure – Talent" documents.

  3. Organizational charts detailing who supervised each of Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

  4. "Workday" [AIG's human resource management software system] or "head-count" reports detailing who supervised Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

  5. A supplemental interrogatory answer detailing (name, date of birth, gender, and compensation) who supervised 9 Plaintiff's former direct reports after the reorganization was implemented in 2018 and going forward.

C. Gwen U. Documents/Gloria W. Complaint Documents;

  1. All documents relating to the claim of Gwen U. that she was terminated and did not resign as alleged by her manager, as identified by Defendants in response to Plaintiff's Interrogatory No. 20.

  2. All documents relating to the age and race discrimination complaint of Gloria W., as identified by Defendants in response to Plaintiff's Interrogatory No. 19.

D. Job Grade Information (Criteria and Standards);

Job grade information and documents (criteria and standards) for the following:

  a. Females who reported to Rudolf's supervisors (2013-1017) including Marya Propis, Lynn Oldfield, Carolina Klint, and Nadine Silva;

  b. Tom Grandmaison, who in 2016 was compared to Plaintiff for compensation purposes;

  c. Steve Grabek, who for a brief period assumed Plaintiff's duties and also held a similar role (Grabek is mentioned in the Am. Compl., ECF No. 41, at paragraphs 62, 23, 94, 95, 169, and 225);

  d. Tim DeSett, who Plaintiff alleges assumed some of his duties including at a higher job grade 27;

  e. The other "Key Priority Leaders" (Plaintiff was a Key Priority Leader), namely, Alexander Baugh, Anthony Baldwin, Carol Barton, George Stratts, and Jeremy Johnson.

E. Plaintiff's Comparator Information;

1. All information about compensation (base, short term incentive, long term incentive, other bonus) paid to comparator Marya Propis in 2017 and 2018.

2. Tim DeSett's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

3. All compensation information for Nadine Silva for 2017.

F. Defendants' Alleged Comparator Information.

1. Mike Hayes' performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his performance of his job duties.

2. John Gambale's job description.

3. John Gambale's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

Respectfully submitted,

s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
LIEBER HAMMER HUBER & PAUL, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
Counsel for Plaintiff John Rudolf

# CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Kevin Leblang, Esq.
>Izabel P. McDonald, Esq.
>Rachel Schuman, Esq.
>Kramer Levin Naftalis & Frankel, LLP
>1177 Avenue of the Americas
>New York, N.Y. 10036
>(212) 715-9100 (tel.)
>(212) 715-8000 (fax)
>
>Jaime S. Tuite, Esq.
>Marjorie F. Bagnato, Esq.
>Buchanan Ingersoll & Rooney, P.C.
>Union Trust Building
>501 Grant Street, Suite 200
>Pittsburgh, PA 15219-1410
>(412) 562-8800 (tel.)
>(412) 562-1041 (fax)
>
>Counsel for Defendants

        s/James B. Lieber
        James B. Lieber
        Counsel for Plaintiff