# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RUDOLF, | ) | Civil Action No. 2:19-cv-01468-MPK |
| | ) | |
| Plaintiff, | ) | The Hon. Maureen P. Kelly |
| | ) | U.S. Magistrate Judge |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND SUPPLEMENTAL INFORMATION**

James B. Lieber
PA I.D. No. 21748
Thomas M. Huber
PA I.D. No. 83053
Jacob M. Simon
PA I.D. No. 202610
LIEBER HAMMER HUBER & PAUL, P.C.
1722 Murray Ave., 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (tel.)
(412) 687-3140 (fax)

Counsel for Plaintiff,
John Rudolf

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2022, Plaintiff moved to compel (ECF No. 102) the following:

A.  CVS/Caremark/MedPartners ("Caremark") Litigation and Settlement Documents;

1.  All meeting agendas (with cover emails showing recipients) referencing the Caremark litigation or settlement (preliminary and/or final) for the period from January 1, 2016 through December 31, 2017 for the (a) "Group Risk Committee," (b) "Commercial Risk Committee," and/or (c) "Risk and Capital Committee."

2.  Unredacted versions of the (a) 12/5/2017 "Group Risk Committee" Meeting Agenda, Ex. 190 (page AIG007156); (b) 12/12/17 "Commercial Risk Committee" Meeting Agenda, Ex. 191 (page AIG006781), and; (c) "Risk and Capital Committee" Meeting Agenda, Ex. 192 (page AIG007206). The limited requested areas to be unredacted are highlighted in yellow.

3.  Caremark settlement documents (notes, memoranda, *etc.*) including underlying approvals for settlement (whether preliminary or final) and payout of settlement proceeds ($230 million of $310 million settlement).

B.  2017-18 Reorganization Documents;

1.  Unredacted versions of the (a) 8/10/2017 Commercial Insurance "Structure/ Accountabilities /Workforce Anatomy," Ex. 184; (b) 8/31/17 "Commercial Organizational Structure," Ex. 185; (c) 9/13/17 "Organizational Structure – Talent," Ex. 187, and; (d) 7/31/17 "Extended Leadership Group" or "ELG" List.  Ex. 183.

2.  All unredacted versions (with cover emails showing recipients) from July 1, 2017 through December 31, 2018 of (a) Commercial Insurance "Structure/ Accountabilities/Workforce Anatomy" documents, (b) "Commercial Organizational Structure" documents, and/or (c) "Organizational Structure – Talent" documents.

3.  Organizational charts detailing who supervised each of Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

4.  "Workday" reports detailing who supervised Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

5.  A supplemental interrogatory answer detailing (name, date of birth, gender, and compensation) who supervised 9 Plaintiff's former direct reports after the reorganization was implemented in 2018 and going forward.

C.  Gwen U. Documents/Gloria W. Complaint Documents;

1.  All documents relating to the claim of Gwen U. that she was terminated and did not resign

as alleged by her manager, as identified by Defendants in response to Interrogatory No. 20.

2. All documents relating to the discrimination complaint of Gloria W.

D. Job Grade Information (Criteria and Standards);

a. Females who reported to Rudolf's supervisors (2013-1017) including Marya Propis, Lynn Oldfield, Carolina Klint, and Nadine Silva;

b. Tom Grandmaison, who in 2016 was compared to Plaintiff for compensation purposes;

c. Steve Grabek, who for a brief period assumed Plaintiff's duties and also held a similar role;

d. Tim DeSett, who Plaintiff alleges assumed his duties including at a higher job grade 27;

e. Other "Key Priority Leaders" like Plaintiff: Alexander Baugh, Anthony Baldwin, Carol Barton, George Stratts, and Jeremy Johnson.

E. Plaintiff's Comparator Information;

1. All information about compensation (base, short term incentive, long term incentive, other bonus) paid to comparator Marya Propis in 2017 and 2018.

2. Tim DeSett's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

3. All compensation information for Nadine Silva for 2017.

F. Defendants' Alleged Comparator Information.

1. Mike Hayes' performance evaluations or similar documents in unredacted form.

2. John Gambale's job description.

3. John Gambale's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

On May 24, 2022, Defendants filed a Brief in Opposition. ECF No. 117. Defendants agreed to provide documents/information in response to the following requests:

- **B(5)** – A chart of Plaintiff's direct reports showing who they reported to from his separation through 2019. *Id.* p. 14.

- **C(1)** – "Gwen U.'s lawyer's letter to AIG." *Id.* p. 15.

- **D(a)** – job codes/ grades corresponding to Marya Propis, Lynn Oldfield, Carolina Klint, and Nadine Silva in 2016 and 2017. *Id.* p. 17.

- **E(1)** – Propis severance agreement payments. *Id.* p. 18.

- **E(3)** – Silva 2017 compensation information. *Id.* p. 18.

- **F(1)** – Unredacted versions Hayes's performance reviews. *Id.* p. 19.

- **F(2)** – Gambale's job description from February 2018. *Id.* p. 19.

Plaintiff requests the Court to order Defendants to supply this information as soon as possible.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs to the case...." Fed. R. Civ. P. 26(b)(1). A party who received evasive or incomplete discovery responses may seek a Court order to compel disclosure of materials sought. Fed. R. Civ. P. 37(a). The moving party bears the initial burden of proving the relevance of the requested information. *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Holtec Int'l v. ARC Machines, Inc.*, 2021 WL 2111150, at *1–2 (W.D. Pa. May 25, 2021) (quotation omitted).

### III.  DISCUSSION

The requested discovery comes within the broad scope of relevance and is not outweighed by any potential harm.

**A.     CVS Litigation and Settlement Documents Are Relevant.**

Documents relating to the Caremark Litigation and settlement are clearly relevant to Plaintiff's SOX and Pa. Whistleblower claims.  *See* Am. Compl., ECF No. 41, ¶¶ 45-50; 75-91; 106; 117-125; 138-39; 150-51; 175.  Within days of the November 2017 termination decision, Rudolf reported to Baugh and AIG Investigators that, in connection with the Caremark litigation and settlement, AIG allowed former Chairman of the Board Steve Miller to be misled to the true nature of the underlying "unlimited" insurance policies, a fraud against CVS, AIG shareholders, and regulators and/or which could jeopardize AIG's de-SIFI status.  *See id.*, ¶¶ 84-86, 123, 138, 144, 150. Relevance is demonstrated by the Parties' ESI Search Protocol for terms "Caremark," "MedPartners," and "CVS." ECF No. 102-4, First ESI Search Protocol, Tab B, p. 3 (Baugh); Second ESI Search Protocol, p. 8 (Johnson), Tab B, p. 9 (Schimek).  Documents reflect that CVS was a major client of AIG, that the relationship was "sensitive," and that AIG was attempting to compartmentalize its business with CVS, and the re-opened pension class action in Alabama.  *See* Ex. 33, p. 3, 2/2/16 Ron Willett email to Plaintiff (attached Tab A).  There is no record evidence that CVS and AIG settled between them or how their sums paid to the class plaintiffs were arrived at.

Zaffino received the meeting agenda referencing the CVS litigation on December 2, 2017. *See* ECF No. 102-5, p. 6.  It was one of only 27 risk events reported in 2017.  *Id.* p. 9.  In December 2017, it was regarded as an "unchanged" and "elevated" "legal and regulatory risk" by the Corporation prior to this litigation.  *Id.*  Significant risk events are decided by high-level individuals

4

including the CFO, General Counsel, Head of Enterprise Risk, Head of Operations, and Head of Audit. Zaffino Dep. at 151-53 (attached at Tab B). Invitees to the Risk Committee meetings included CEO Brian Duperreault, General Counsel Lucy Fato, and Zaffino. *Id.* at 160. Zaffino considered the litigation a legacy event but that did not mean it was over. *Id.* at 159. The financial loss was absorbed by AIG as the Parent. *Id.* at 156. Since Zaffino received at least 3 Committee invites and the agendas included references to the CVS litigation, (Exs. 190-192), a Jury could reject Zaffino's claim that he has no recollection of the CVS Medpartners issue. *See* Zaffino Dep. at 161.

Contrary to Defendants' argument, Plaintiff was not dilatory. Since the beginning of discovery, he requested Caremark-related documents and was informed any relevant documents were produced. *See* ECF No. 102-3. On April 20, 2022, for the first time in conjunction with documents compelled for the Zaffino deposition, Defendants produced the at-issue high-level meeting agendas that reference CVS litigation as a major company risk. Plaintiff had no prior knowledge of these documents. Contrary to Defendants' argument, Baugh (whom they claim knew nothing about the Caremark litigation) was sent an email on December 11, 2017 which attached a Commercial Risk Committee document noting, "Commercial risk events reported in the Americas as of November 30, 2017, including $239MM class action settlement involving CVS/MedPartners, with the financial loss being absorbed by the Parent." *See* ECF No. 102-5, p. 9-10. Based on the inclusion of the terms "CVS" and "MedPartners" and Baugh as Custodian, this document should have been produced in response to the First ESI Search Protocol but was not. *See* ECF No. 103-4, p. 4 (Baugh – 1/1/2016-12/31/17 – search terms "MedPartners" and "CVS").

Contrary to Defendants' argument, having to do another ESI search does not justify denying the motion to compel and no caselaw support was provided. Since the Meeting Agendas now have

5

been identified by name and are limited in temporal scope, there is no need to even conduct an ESI search to retrieve them.

Plaintiff requests the Court to review *in camera* the highlighted portions of select pages identified in Exhibits 190, 191, and 192 in unredacted form to determine if there are further references to the Caremark litigation. Based on the context of the documents, they may have been over-redacted. The Court will not have to review hundreds of pages as alleged.

Contrary to Defendants' argument, the request for settlement documents is not so unlimited in temporal scope since the settlement occurred in 2016 (not over the course of the 13 year litigation). Based on the specific request, there is no need to conduct an ESI search to retrieve the documents. The settlement documents can bolster Plaintiff's protected report that AIG allowed Miller to be misled to the true nature of the underlying "unlimited" insurance policies. They also can call into question Baugh's "know-nothing" claim since "he was Global Head of Financial Lines which unit agreed to the settlement," (ECF No. 41, p. 16, ¶ 90), and Baugh's subordinates such as Tatulli, Berg, or Leahy likely were involved. *See* ECF 102-6, p. 67 (org chart); Ex 33, p. 3 (Willet email noting Tatulli as point person for CVS/AIG issue).

**B.**     **2017-18 Reorganization Documents Are Relevant.**

The reorganization documents are relevant to issues of both pretext for the termination decision (others who could assume Plaintiff's role, Plaintiff's position not going to survive) as well as comparator information for the gender and age discrimination claims. ECF No. 102, p. 7, ¶¶ 18-19. Plaintiff had requested all documents related to the reorganization and he did not know about the particular documents until they were produced on April 20, 2022. The redacted pages of the reorganization documents relate to Plaintiff's comparators in General Insurance, and set forth the

6

comparators' "Manager," "Roles," "Primary Accountabilities," and "Other Accountabilities." *See* ECF No. 102-6, p. 26. This is exactly the type of information Plaintiff needs for both his whistleblower and discrimination claims and it should be produced.

Plaintiff disputes the claim that prior to April 20, 2022 Defendants had produced all non-privileged documents sent or received by Baugh concerning the reorganization. The recently produced documents show that Baugh (who was on the reorganization team) was copied on emails that include references to Plaintiff. *See* ECF No. 102-6, p. 36 (Pezzuto email of 8/30/17 to, *inter alia*, Baugh) ("Attached are the materials for tomorrow's 3 pm meeting on Commercial Organization Structure"); ECF No. 102-6, p. 59 (org chart with Plaintiff), p. 65 (map with Plaintiff), p. 67, p. 73. Plaintiff requested these documents throughout discovery and Defendants should have produced them earlier. Defendants' argument that it will have to conduct an ESI search is not well taken since the requested documents have been identified and the temporal scope is limited to the time of the reorganization.

Defendants admit that Workday can generate organizational charts albeit "only in the current moment," yet Defendants have refused to provide any such charts. Defendants also admit that Workday contains information about an employer's manager history, including where an employee moves over time. This is exactly the information Plaintiff is requesting (who assumed his managerial duties and when) and Defendants should be ordered to produce it. In the meet and confer, Defendants proposed that Plaintiff agree sight unseen that he forego any organizational charts/ Workday materials regarding his direct reports in exchange for Defendants' work product listing individuals who have managed Rudolf's direct reports since his separation through 2019. Defendants already were ordered by this Court to provide this information yet they refuse to provide

it. *See* ECF No. 85 & 94. Defendants have refused to provide the proposed work product for Plaintiff's Counsel's review, necessitating this Motion to Compel. *See* ECF 102, p. 10, ¶¶ 34-35.

Contrary to Defendants' argument, they have not completely answered the interrogatory as to who assumed Plaintiff's managerial duties. Plaintiff had 9 direct reports. After he left, it is undisputed those 9 individuals reported to other managers. Plaintiff is entitled to discover the identity of these other managers. Whether Plaintiff would have continued to supervise these 9 individuals after the reorganization is open to debate, but it does not preclude Plaintiff from discovering the managers' identity (name, gender, date of birth, job grade, compensation/bonus history, criteria for compensation during relevant time) since that information is relevant to Plaintiff's discrimination claims. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729-30 (3d Cir. 1995) (terminated plaintiff's replacements can be considered incrementally).

C.      **Gwen U. Documents/Gloria W. Complaint Documents Are Relevant.**

Defendants now agree to produce "Gwen U.'s lawyer's letter to AIG." ECF No. 117, p. 15. To the extent there are other documents related to this issue, such as AIG's response to Gwen U.'s lawyer letter, Plaintiff requests the Court to order Defendants to produce them as well and not limit production to a single letter. Defendants refuse to produce documents related to Gloria W.'s gender discrimination complaint on privacy grounds. W. was in the Commercial Insurance organization and had reported to Plaintiff (she was one of his 9 direct reports). *See* ECF No. 102, p. 10, ¶ 31. The requested information is relevant to a corporate atmosphere of discrimination as well as to the identity of Plaintiff's successor in terms of supervising W. after Plaintiff's termination. Any privacy concerns are not well taken since there is a Protective Order (ECF No. 49) in place. *See Butter v. City of Pittsburgh*, 2020 WL 1703850, at *1–2 (W.D. Pa. Apr. 8, 2020) (granting motion to compel

comparator personnel files noting, "the parties may enter into an appropriate protective order").

D.  **Job Grade Information (Criteria and Standards) Is Relevant.**

As mentioned above, Defendants now agree to produce job codes for Propis, Oldfield, Klint, and Silva for 2016 and 2017.  ECF No. 117, p. 17.  Job code information for Tom Grandmaison is relevant since AIG had used him as a comparator to Rudolf for compensation purposes.  Job code information for Steve Grabek is relevant since he assumed Plaintiff's duties for a period following termination, Defendants have identified him as a comparator, and he held a similar role to Plaintiff.  Job code information for Tim DeSett is relevant since DeSett was hired shortly after Plaintiff's termination, (ECF No. 85-5 ("AIG introduces new head of general insurance field operations," naming Mr. DeSett" 1/25/2018)), and Plaintiff alleges he assumed some of Plaintiff's duties.  ECF No. 102, ¶ 55.  In 2016, Rudolf became a "Key Priority Leader" and remained a Job Grade 26.  ECF No. 41, ¶ 65.  The other "Key Priority Leaders" were Alexander Baugh, Anthony Baldwin, Carol Barton, George Stratts, and Jeremy Johnson.  They "were Job Grade 27 or higher which, as Johnson admitted, was a clear difference for Rudolf's salary and job grade promotion particularly when compared with Rudolf's lower Job Grade 26. Therefore, this newly created position, with enormous increased responsibilities, especially when compared to others, constituted a promotion which Johnson expressly stated warranted a salary and job grade review."  *Id.* ¶ 66.  The job code information for the other 5 Key Priority Leaders is relevant for comparison purposes.

Defendants' argument that its job code information is highly confidential is not well taken since it is limited to a discrete number of jobs/employees and there is a firm confidentiality order in place.  Since Defendants have failed to show "the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure," the job code information certainly

should be produced.  *See Holtec*, 2021 WL 2111150, at *1–2.

E.     **Plaintiff's Comparator Information Is Relevant.**

Defendants now agree to produce a document showing payments Propis received in 2017 and/or 2018 as well as Silva's 2017 compensation information.  ECF No. 117, p. 18.  Plaintiff disputes Defendants' claim there is no support that DeSett assumed some of Plaintiff's duties.  When creating DeSett's position (Head of Field Operations), Human Resources indicated that Rudolf (along with Grabek and Propis) had been performing those duties.  *See* Ex. 104, p. 4, AIG 3935 ("When reviewing the responsibilities of the newly defined role of the 'Head of Field Operations', I wanted to be sure to encompass anyone currently performing those duties into the decisional unit. Those generally performing those duties were Marya Propis, John Rudolf (now no longer with AIG), and Steve Grabek ....") (attached at Tab C).  A reasonable juror would be able to infer that Rudolf would have been able to compete for this Job Grade 27 position had he not been swiftly purged with a phony and contested resignation.

F.     **Defendants' Alleged Comparator Information Is Relevant.**

Defendants refuse to provide Gambale's performance reviews asserting he assumed only a minor portion of those duties and they are not reflected on his performance reviews.  Plaintiff should be able to review those reviews and be able to contest Defendants' claim that Gambale assumed Plaintiff's duties.

## IV.  CONCLUSION

Plaintiff respectfully requests the Court to enter an order directing Defendants to produce the requested information and documents.  Again there is simply no prejudice due to a protective order.

Respectfully submitted,

s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
LIEBER HAMMER HUBER & PAUL, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
Counsel for Plaintiff John Rudolf

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Kevin Leblang, Esq.
>Izabel P. McDonald, Esq.
>Rachel Schuman, Esq.
>Kramer Levin Naftalis & Frankel, LLP
>1177 Avenue of the Americas
>New York, N.Y. 10036
>(212) 715-9100 (tel.)
>(212) 715-8000 (fax)
>
>Jaime S. Tuite, Esq.
>Marjorie F. Bagnato, Esq.
>Buchanan Ingersoll & Rooney, P.C.
>Union Trust Building
>501 Grant Street, Suite 200
>Pittsburgh, PA 15219-1410
>(412) 562-8800 (tel.)
>(412) 562-1041 (fax)
>
>Counsel for Defendants

                s/James B. Lieber
                James B. Lieber
                Counsel for Plaintiff