IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RUDOLF, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN INTERNATIONAL GROUP, ) <br> INC., NATIONAL UNION FIRE ) <br> INSURANCE COMPANY OF ) <br> PITTSBURGH, PA, and ALEXANDER ) <br> BAUGH, ) <br> ) <br> Defendants. ) | Civil Action No. 19-1468 <br> Magistrate Judge Maureen P. Kelly <br><br> Re: ECF No. 102 |

## MEMORANDUM ORDER

Plaintiff John Rudolf ("Rudolf") initiated this action against Defendants American International Group, Inc. ("AIG"), National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") and Alexander Baugh ("Baugh") (collectively, "Defendants") arising out of allegations that he was unlawfully terminated from his employment in violation of the Sarbanes-Oxley Act, the False Claims Act, the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act ("PHRA"). Rudolf also brings claims for Equal Pay Act violations, intentional interference with contractual relations, fraud, wrongful discharge, and breach of contract. ECF No. 41.

Presently before the Court is Rudolf's Motion to Compel Document Production and Supplemental Information (the "Motion to Compel"). ECF No. 102. For the reasons that follow, the Motion to Compel will be granted in part and denied in part.

I.  **BACKGROUND**

Rudolf is a senior insurance executive who was formerly employed by AIG and/or NUFIC. ECF No. 41 ¶ 5; ECF No. 31-1 ¶¶ 2-3. Rudolf claims that he was unlawfully terminated from his position in November 2017 for reporting fraud. ECF No. 76 at 2. He alleges that he disclosed fraudulent activities involving AIG in a phone call with Baugh, who was Rudolf's supervisor and AIG's Chief Executive Officer of North America General Insurance, on November 12, 2017. Id.; ECF No. 41 ¶ 6. According to Rudolf, Baugh then falsely reported to Peter Zaffino ("Zaffino"), the CEO of AIG General Insurance, that Rudolf had resigned during this call. ECF No. 76 at 2.

Since the initial case management conference in this case, conducted on March 30, 2021, the parties have conducted extensive fact discovery. ECF No. 54. The Court has dealt with a number of discovery disputes. ECF Nos. 63, 70, 74, 79, 83, 88, 93, 94 and 95.

On May 2, 2022, Rudolf filed the instant Motion to Compel. ECF No. 102. He moves to compel production or unredacted production of six specifically identified categories of discovery. Defendants filed a Memorandum of Law in Opposition on May 24, 2022. ECF No. 117. Rudolf filed a Reply Brief on June 3, 2022. ECF No. 146. The Motion to Compel is now ripe for consideration.

II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) defines the permissible scope of discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment. Decisions related to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Phila. Hous. Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009).

### III. DISCUSSION

Having considered the Motion to Compel, Defendants' Memorandum of Law in Opposition, Plaintiff's Reply Brief and the accompanying declarations and material in support, the Court will address each of the six categories of documents seriatim.

**A. CVS/Caremark/MedPartners ("Caremark") Litigation and Settlement Documents.**

1. All meeting agendas (with cover emails showing recipients) referencing the Caremark litigation or settlement (preliminary and/or final) for the period from January 1, 2016 through December 31, 2017 for the (a) "Group Risk Committee," (b) "Commercial Risk Committee," and/or (c) "Risk and Capital Committee."

Defendants are directed to produce any other meeting agendas, with cover emails, for the three specifically identified committees for the period of January 1, 2016 through December 31, 2017, that reference the Caremark litigation or settlement, to the extent that they have not yet been produced.

2. As described further herein, unredacted versions of the (a) 12/5/2017 "Group Risk Committee" Meeting Agenda, Ex. 190 (at page AIG007156); (b) 12/12/17 "Commercial Risk Committee" MeetingAgenda, Ex. 191 (at pageAIG006781), and; (c) "Risk and Capital Committee" Meeting Agenda, Ex. 192 (at page AIG007206). The limited requested areas to be unredacted are highlighted in yellow on the attached exhibits.

Defendants are directed to provide the unredacted and redacted versions of Exhibits 190, 191 and 192 to the Court for *in camera* review, on or before June 10, 2022.

3. Caremark settlement documents (notes, memoranda, etc.) including underlying approvals for settlement (whether preliminary or final) and payout of settlement proceeds ($230 million of $310 million settlement).

Plaintiff argues that the requested settlement documents are relevant to determine the AIG individuals who had decision making authority over the Caremark litigation and whether those individuals included Mr. Baugh or anyone else in the chain of command. ECF No. 102 at 6-7. Defendants assert that they have conducted exhaustive ESI searches pursuant to two ESI protocols and represent that they have located no Caremark settlement documents in Baugh's emails. ECF No. 117 at 13. Upon review, the Court finds that Plaintiff's request is overly broad and has no limitation in time. In addition, this document request appears to be duplicative of prior discovery requests, including ESI searches. As such, the Motion to Compel this document request is denied.

**B. 2017-18 Reorganization Documents**

1. Unredacted versions of the (a) 8/10/2017 Commercial Insurance "Structure/ Accountabilities /Workforce Anatomy," Ex. 184; (b) 8/31/17 "Commercial Organizational Structure," Ex. 185; (c) 9/13/17 "Organizational Structure –

  Talent," Ex. 187, and; (d) 7/31/17 "Extended Leadership Group" or "ELG" List. Ex. 183.

2. All unredacted versions (with cover emails showing recipients) from July 1, 2017 through December 31, 2018 of (a) Commercial Insurance "Structure/Accountabilities/WorkforceAnatomy" documents, (b) "Commercial Organizational Structure" documents, and/or (c) "Organizational Structure – Talent" documents.

3. Organizational charts detailing who supervised each of Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

4. "Workday" [AIG's human resource management software system] or "head-count" reports detailing who supervised Plaintiff's 9 former direct reports after the reorganization was implemented in 2018 and going forward.

5. A supplemental interrogatory answer detailing (name, date of birth, gender, and compensation) who supervised 9 Plaintiff's former direct reports after the reorganization was implemented in 2018 and going forward.

  The identified documents appear to the Court to be relevant to the 2017-2018 reorganization and to Defendants' purported legitimate non-retaliatory reasons for Mr. Baugh's decision to separate Plaintiff from employment. They also appear to be relevant to the identification of comparators and job duties and responsibilities for purposes of Plaintiff's Title VII, ADEA, PHRA and Equal Pay Act claims. Accordingly, the identified documents must be produced, including unredacted versions, and the identified supplemental interrogatory answer must be provided. Further, to the extent that Workday cannot generate the requested historical organizational charts, Defendants are directed to create the chart(s) for Plaintiff for each of his direct reports as of his separation and through 2019.

### C. Gwen U. Documents/Gloria W. Complaint Documents

1. All documents relating to the claim of Gwen U. that she was terminated and did not resign as alleged by her manager, as identified by Defendants in response to Plaintiff's Interrogatory No. 20.

2. All documents relating to the age and race discrimination complaint of Gloria W., as identified by Defendants in response to Plaintiff's Interrogatory No. 19.

The identified requests seek documents on topics that this Court has previously determined may be relevant to Plaintiff's claims and are discoverable. See ECF No. 94. As to Gwen U., who claims that she was terminated and did not resign, Defendants must produce the letter from Gwen U.'s lawyer to AIG as well as any written response by AIG. As to Gloria W., she was a direct report to Plaintiff. She made an internal complaint of race and gender discrimination. As to Gloria W., Defendants must produce any internal document documenting the complaint and response. Any privacy concerns are addressed by the Protective Order that is place.

**D. Job Grade Information (Criteria and Standards)**

Job grade information and documents (criteria and standards) for the following:

a. Females who reported to Rudolf's supervisors (2013-1017) including Marya Propis, Lynn Oldfield, Carolina Klint, and Nadine Silva;

b. Tom Grandmaison, who in 2016 was compared to Plaintiff for compensation purposes;

c. Steve Grabek, who for a brief period assumed Plaintiff's duties and also held a similar role (Grabek is mentioned in the Am. Compl., ECF No. 41, at paragraphs 62, 23, 94, 95, 169, and 225);

d. Tim DeSett, who Plaintiff alleges assumed some of his duties including at a higher job grade 27;

e. The other "Key Priority Leaders" (Plaintiff was a Key Priority Leader), namely, Alexander Baugh, Anthony Baldwin, Carol Barton, George Stratts, and Jeremy Johnson.

One of Plaintiff's claims in the instant lawsuit is that his job grade of 26 should have increased to a job grade of 27, given the additional duties and responsibilities that were assigned to him in 2016 and 2017. Plaintiff has requested job grade criteria and standards. The parties had disputed the scope of these requests. It appears that, as a result of meet and confer meetings between counsel, Plaintiff has narrowed his request for job grade/code information to the twelve people identified above. The Court finds that the job grade/code information for these twelve

people is relevant to Plaintiff's claims and is discoverable. Any confidentiality concerns are addressed by the Protective Order that is in place.

### D. Plaintiff's Comparator Information

1. All information about compensation (base, short term incentive, long term incentive, other bonus) paid to comparator Marya Propis in 2017 and 2018.

2. Tim DeSett's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

3. All compensation information for Nadine Silva for 2017.

Plaintiff seeks to compel the production of compensation and evaluation documentation as to three other senior employees that he has identified as comparators. Defendants now agree to produce the cover sheet of Propis' severance agreement detailing the payments she received and Silva's 2017 compensation information. As to DeSett, Defendants are directed to produce the identified documents as they may contain relevant information and are discoverable. Again, the Protective Order addresses any confidentiality concerns.

### E. Defendants' Alleged Comparator Information.

1. Mike Hayes' performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his performance of his job duties.

2. John Gambale's job description.

3. John Gambale's performance evaluations or similar documents in unredacted form from 2018 to the present reflecting his job duties and/or performance of those duties.

Following the alleged termination of Plaintiff's employment, his job duties were allegedly split up between certain individuals, including Mike Hayes (client engagement) and John Gambale (Asian corporate solutions). As such, Plaintiff seeks to compel the production of documentation relative to the duties that these two individuals have been performing. Defendants now agree to

produce the unredacted versions of the performance evaluations for Mike Hayes and the job descriptions for Mr. Gambale. However, Defendants refuse to produce Mr. Gamabale's performance reviews, arguing that they are irrelevant and he only assumed a minor portion of Plaintiff's duties. As to the Gambale performance reviews, Defendants are directed to produce them as they may contain relevant information that is discoverable. Again, the Protective Order addresses any confidentiality concerns.

IV.   **CONCLUSION**

For the foregoing reasons, the Motion to Compel is granted in part and denied in part.

**ORDER**

AND NOW, this 7ch day of June, 2022, it is HEREBY ORDERED that Plaintiff's Motion to Compel Document Production and Supplemental Production, ECF No. 102, is GRANTED in PART and DENIED in part, as fully set forth herein. Defendants are directed to produce the compelled documents on or before June 17, 2022, with the exception of the Workday and/or organization charts that must be produced by June 21, 2022. In addition, the three exhibits referred to as Item A.2. must be produced for in camera review on or before June 10, 2022, as addressed above.

BY THE COURT,

_____
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:   All counsel of record via CM/ECF.